IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br> ex rel. PHILIP MARSTELLER and <br> ROBERT SWISHER, <br><br> Plaintiffs/Relators, <br><br> v. <br><br> LYNN TILTON and MD <br> HELICOPTERS, INC., <br><br> Defendants. | CIVIL ACTION NO. <br><br> 5:13-cv-00830-AKK <br><br> **Jury Trial Requested** |

## RELATORS' TRIAL BRIEF

Pursuant to the Court's Standard Pretrial Procedures, Relators file this Trial Brief to address the following issues pertaining to the trial of this action: (1) Elements to Be Tried; (2) Materiality; (3) Damages; (4) Whether Defendant Tilton's Actions and Knowledge Bind MD Helicopters; (5) Bribery and Gratuity Offenses; and (6) Defendants' Affirmative Defenses.

### I. INTRODUCTION

Beginning September 10, 2021, this action is set to be tried against Defendants for their fraudulent inducement of three FMS contracts (El Salvador, SANG, and Costa Rica) based on Defendants' false representation that they intended to comply with FAR § 52.203-13. In its August 23, 2021 Opinion on Defendants' Motion for Summary Judgment ("MSJ Op."), the Court limited the causes of action and made rulings with respect to two fraudulent inducement elements—materiality and damages—which narrowed the issues the jury must decide.

## II. ARGUMENTS AND AUTHORITIES

A. **Elements to Be Tried: Falsity, Scienter, and Causation.**

The elements of a claim for fraudulent inducement under the False Claims Act are (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, and (4) that caused (5) the government to pay out money or forfeit moneys due (*i.e.*, damages). MSJ Op. at 15–16. In its opinion on summary judgment, the Court found that non-compliance with FAR § 52.203-13 is necessarily material. *See infra*, Section B. In addition, as explained below, the measure of damages is a question of law. *See infra*, Section C. Therefore, the only elements left for the jury are falsity, scienter, and causation.

B. **Compliance with FAR § 52.203-13 is material to the U.S. Government.**

The Court held in its August 23 Opinion that "noncompliance with FAR § 52.203-13 is material because 'the Government would have attached importance to the violation in determining whether to pay the claim' and because noncompliance is neither 'minor nor insubstantial' nor 'amounts to [a] []garden-variety breach[] of contract or regulatory requirements.'" MSJ Op. at 20–21 (citations omitted). The Eleventh Circuit previously held the same, finding that "[t]he Government would not have entered into those [FMS contracts] had it known of the defendants' unwillingness to comply with" FAR § 52.203-13. *United States ex rel. Marsteller v. Tilton*, 880 F.3d 1302, 1314–15 (11th Cir. 2018). Therefore, Relators have established materiality as a matter of law, and the jury need not decide whether compliance with FAR § 52.203-13 is material to the Government.

C.   **The measure of damages is a legal question.**

The Court similarly held in its August 23 Opinion that, "[n]or is there any dispute that the Army paid claims under the defendants' FMS contracts, which all incorporated FAR § 52.203-13." Doc. 209 at 21. Relators agree. In fact, MD Helicopters admits in interrogatory answers to the dates and amounts of each payment under the relevant contracts, and Relators adopted those same amounts in their Damages List (Doc. 201) as the payment amounts under each of the fraudulently induced contracts. Therefore, there is no fact dispute about the amounts paid by the Government under the relevant contracts.

As the Court held in its Opinion, when 'a contractor's ultimate claims for payment' are grounded in fraud, then **all 'subsequent claims are false []because of an *original fraud* (whether a certification or otherwise).[]**" Doc. 209 at 15 (quoting *Marsteller*, 880 F.3d at 1314) (bolded emphasis added).[1] In other words, if Relators establish and the jury returns a verdict finding that Defendants fraudulently induced the El Salvador, SANG, and/or Costa Rica Contracts, all payments flowing from the fraudulently induced contract(s) resulted from false claims as a matter of law. This holding, stemming from longstanding Supreme Court precedent in *United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943), also comports with case law in the Eleventh Circuit. In *United States v. Anghaie*, 633 Fed. App'x 514, 519 (11th Cir. 2015), the Eleventh Circuit found the district court did not err in a False Claims Act case by awarding the Government "the full amount of the payments made to the company." The Eleventh Circuit quoted the D.C. Circuit's opinion in *United*

---

[1] Likewise, because the number of payments to MD under the relevant contracts is not in dispute, and because all claims are false that stem from an original fraud, the number of false claims is not in dispute if the jury finds for Relators on their fraudulent inducement claims. The Court would assess an appropriate per-claim penalty under the False Claims Act.

3

*States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) for the following proposition:

> [W]here the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather that the government itself, the government can easily establish that it received nothing of value from the defendant and **that all payments made are therefore recoverable as damages**.

*Id.* (emphasis added); *see also United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 473 (5th Cir. 2009) (calculating damages as the amount the government paid to the defendants where "[t]he contracts entered . . . did not produce a tangible benefit" to the government and were instead part of a grant program designed to award money to deserving small businesses); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (concluding that the defendant was required to repay the full amount of Medicare and Medicaid claims as damages because the defendant "did not furnish any medical service to the United States"). Likewise, here, Relators allege that Defendants fraudulently sought payments from the Government for helicopters that were purchased under the FMS program *for the benefit of U.S. allies*. The parties do not dispute that the United States Government did not receive the helicopters or services under the relevant contracts. Because the Government itself received nothing of value in its bargain with MD and the fraud subverted the integrity and purpose of the FMS program, the appropriate measure of damages for the Court to apply is "all payments made."

D.   **Defendant Tilton's actions and knowledge are imputed to MD Helicopters.**

Defendant Tilton was the CEO of MD Helicopters during the entire relevant time period of this case, and her actions and knowledge are imputed to MD. MSJ Op. at 2. The Eleventh Circuit has long held that corporations may be liable under the False Claims Act

4

for the knowledge and acts of their employees, even employees much lower on the totem pole than Tilton. *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983). In *Grand Union*, for example, the government brought an FCA claim against a grocery store that accepted food stamp coupons on certain ineligible food products (alcohol and cigarettes). At summary judgment, the district court refused to allow the government to impute the knowledge of low-level cash register employees to the company for purposes of proving FCA scienter. The Eleventh Circuit reversed, holding:

> [A] corporation will be liable for violations of the False Claims Act if its employees were acting within the scope of their authority and for the purpose of benefiting the corporation . . . . In short, liability of a corporation for a False Claims Act violation may arise from the conduct of employees other than those with "substantial authority and broad responsibility.

*Id.* at 696, citing *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977). It follows, *a fortiori*, that the liability of a corporation may likewise be based on knowledge and conduct of those with substantial authority and broad responsibility when those high-level employees are acting within the scope of their authority and for the purpose of benefiting the corporation.

In recent years, district courts in the Eleventh Circuit have continued to cite *Grand Union* and *Hangar One*. *See United States ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1255 (M.D. Fla. 2019) (citing *Grand Union*); *United States ex rel. Lewis v. Cmty. Health Sys., Inc.*, No. 18-20394-CIV, 2020 WL 3103994, at *17 (S.D. Fla. June 11, 2020) (citing *Grand Union*); *United States v. Sand Lake Cancer Ctr., P.A.*, No. 8:13-CV-2724-T-27MAP, 2019 WL 423156, at *2 (M.D. Fla. Feb. 4, 2019) (citing *Grand Union*); *U.S. ex*

5

*rel Mazur v. Government Bus. Servs. Group*, LLC, No. 02CV450T17MSS, 2005 WL 1572281, at *3 (M.D. Fla. June 30, 2005) (citing *Hangar One*).

Tilton was the chief executive officer for MD Helicopters during the relevant timeframe, and in that capacity, she had absolute authority to act on MD Helicopters' behalf. Therefore, Tilton's acts and knowledge may be imputed to MD Helicopters.

E.  **Defendants were obligated to report "credible evidence" of bribery and gratuity violations.**

The Court recognized in its August 23 opinion that one critical question in this case is whether, "'in connection with the award, performance, or closeout of [a relevant] contract,'" the defendants had "'credible evidence that a principal, employee, agent, or subcontractor of the Contractor has committed . . . [a] violation of Federal criminal law involving . . . bribery or gratuity violations.'" MSJ Op. at 25–26, quoting 48 C.F.R. § 52.203-13(b)(3)(i). The regulation applies to all Title 18 offenses that "involve" bribery, including, at least, bribery of public officials, 18 U.S.C. § 201(b); the Travel Act, 18 U.S.C. § 1952; and honest-services wire fraud, 18 U.S.C. § 1346. By contrast, 18 U.S.C. § 201(c) is the only relevant Title 18 offense involving gratuity.

To assess whether credible evidence of such violations should have been reported, the jury will need to be instructed on the basic contours of bribery and gratuity law. While the specific elements of each offense involving bribery vary, there are several general concepts that apply to all bribery offenses:

- A bribe can be inferred from circumstantial evidence, including, in part, the timing of the payment. *McDonnell v. United States*, 136 S. Ct. 2355, 2371 (2016).

- The bribery agreement need not be express or "explicit," even if the offense requires a *quid pro quo*. *Id.*; *Evans v. United States*, 504 U.S. 255, 268 (1992).

- The thing offered or requested in exchange for the bribe need not "be harmful to the government or inconsistent with the official's legal obligations." *United States v. Quinn*, 359 F.3d 666, 675 (4th Cir. 1998).

- It is not a defense that the official act sought to be influenced would have been done anyway regardless whether the bribe was received or accepted. *Id.*

- Bribery may be based on a stream of benefits to the public official or to a third party whom the official favors, and the government need not establish that any specific benefit was given in exchange for a specific official act. *See Kemp*, 500 F.3d at 282.

- Payments made with the intent to retain the official's services on an "as needed" basis violate bribery law. *Id.*

In contrast to bribery offenses, the federal gratuity statute does not require an intent to influence. Instead, the statute prohibits "directly or indirectly giv[ing], offer[ing], or promis[ing] anything of value to any [past, present, or future] public official, *for or because* of any official act performed or to be performed by such [official]." 18 U.S.C. § 201(c) (emphasis added). So, "[a]n illegal gratuity ... may constitute merely a reward" for some future or past act by the official. *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 405 (1999).

With respect to all such violations, the FAR requires that a contractor make disclosures whenever it has "credible evidence" that a violation has been committed in connection with the award, performance, or closeout of a contract. Therefore, the relevant question for the jury here is simply whether Defendants, in fact, had credible evidence of a bribery or gratuity violation that they failed to disclose to the Government in connection with the FMS contracts. *See* MSJ Op. at 9 (finding that "relators have proffered evidence

showing that MD Helicopters failed to disclose credible evidence of enumerated criminal violations" and explaining that the court need "not opine on whether this evidence would suffice to sustain criminal convictions for bribery or gratuity violations").

**F.    Defendants' affirmative defenses present no jury questions.**

Defendants filed 23 apparently identical affirmative defenses. None of these presents any questions to be decided by the jury. Relevant authorities establishing why these affirmative defenses are not proper for jury deliberation can be found in Relators' Elements of Claims and Defenses submitted to the Court on August 30, 2021. Defendants' affirmative defenses fall into the following categories:

(1)    Defenses that merely go to whether Relators can establish their fraudulent inducement claims. Those include:

    a.    Fourth Defense:  Lack of Control
    b.    Seventh Defense:  Ratification
    c.    Eleventh Defense:  Non-Actionable Statements of Fact
    d.    Thirteenth Defense:  No Damages
    e.    Seventeenth Defense:  Lack of Scienter
    f.    Eighteenth Defense:  Authorization by Regulatory Body or Officer
    g.    Nineteenth Defense:  Conduct was not Material
    h.    Twentieth Defense:  Claims were not Material
    i.    Twenty-Second Defense:  No Causation

(2)    Defenses that are not applicable to the Government's claims under the False Claims Act. Those include:

    a.    First Defense:  Estoppel
    b.    Fifth Defense:  Government Knowledge Bar
    c.    Sixth Defense:  Failure to Mitigate
    d.    Eighth Defense:  Unjust Enrichment
    e.    Ninth Defense:  Waiver
    f.    Twelfth Defense:  Unclean Hands
    g.    Twenty-First:  Rule of Lenity

(3)    Defenses that have already been rejected or ruled upon. Those include:

    a.    Fifteenth Defense:  Failure to State a Claim

    b.  Sixteenth Defense:  Rule 9(b) Particularity

  (4)  Defenses that are equitable or legal questions for the Court's consideration, not the jury's.  Those include:

    a.  Second Defense:  Judicial Estoppel
    b.  Third Defense:  Violation of FCA Mandatory Seal
    c.  Tenth Defense:  Setoff of Payments Received
    d.  Fourteenth Defense:  Excessive Fines
    e.  Twenty-Third Defense:  Due Process

Under Rule 12(f)(1), the Court may strike an insufficient, redundant, immaterial, or impertinent defense "on its own."  To avoid confusing the jury with irrelevant or inapplicable issues, the Court should do so.

## III.  CONCLUSION

Relators look forward to trial in this matter and are prepared to brief any additional issues the Court would find helpful.

Respectfully submitted August 30, 2021, by:

**HALULEN LAW PLLC**

By: */s/ Gerald C. Robinson*
    Gerald C. Robinson (pro hac vice)
    MN Attorney ID# 0212787
    IDS Center, Suite 1650
    Minneapolis MN 55402
    Tel.: 612-605-4098
    Fax: 612-605-4099
    robinson@halunenlaw.com

**REESE MARKETOS LLP**

By: */s/ Joshua M. Russ*
    Joel W. Reese (pro hac vice)
    Texas Bar No. 00788258
    joel.reese@rm-firm.com
    Pete Marketos (pro hac vice)
    Texas Bar No. 24013101
    pete.marketos@rm-firm.com
    Adam C. Sanderson (pro hac vice)
    Texas Bar No. 24056264
    adam.sanderson@rm-firm.com
    Joshua M. Russ (pro hac vice)
    Texas Bar No. 24074990
    josh.russ@rm-firm.com
    Andrew O. Wirmani (pro hac vice)
    Texas Bar No. 24052287
    andrew.wirmani@rm-firm.com
    Brett S. Rosenthal (pro hac vice)
    Texas Bar No. 24080096
    brett.rosenthal@rm-firm.com
    Allison N. Cook (pro hac vice)
    Texas Bar No. 24091695
    allison.cook@rm-firm.com
    750 N. St. Paul Street, Suite 600
    Dallas, TX 75201

**WARREN BENSON LAW GROUP**

By: */s/ Phillip E. Benson*
    Phillip E. Benson (pro hac vice)
    MN Attorney ID #0394772
    620 Newport Center. Dr., Ste. 1100
    Newport Beach, CA 92660
    Tel: (952) 955-3688
    Fax: (858) 454-5878
    philbenson@warrenbensonlaw.com

**MASTANDO & ARTRIP LLC**

By*: /s/ Dennis A Mastando*
    Dennis A Mastando
    301 Washington Street, Suite 302
    Huntsville, AL 35801
    Tel:256-532-2222
    Tony@mastandoartrip.com

*Attorneys for Qui Tam Relators
Philip Marsteller and Robert Swisher*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 30th day of August 2021, the foregoing document was submitted to the clerk of the U.S. District Court, Northern District of Alabama. I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                       */s/ Joshua M. Russ*
                                                      Joshua M. Russ