FILED
2021 Aug-30 PM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| EX REL. PHILIP MARSTELLER ) | |
| and ROBERT SWISHER, ) | |
| ) | **Civil Action No.** |
| **Plaintiff** ) | |
| ) | **5:13-cv-00830-AKK** |
| vs. ) | |
| ) | |
| LYNN TILTON and MD ) | |
| HELICOPTERS, INC., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MD HELICOPTERS, INC.'S STATEMENT OF ESSENTIAL ELEMENTS

Pursuant to the Court's Standard Pretrial Procedures, Defendant MD Helicopters, Inc. ("MDHI") submits the following statement of essential elements for Relators' claims. Doc. 197, Exhibit A at ¶ 5(a).

Relators have three remaining claims for fraudulent inducement under the False Claims Act corresponding to three contracts entered into by MDHI: El Salvador (signed December 9, 2011), Saudi Arabia National Guard (signed June 29, 2012), and Costa Rica (signed November 30, 2012).[1] Each of those claims shares a common theory based on a contractual provision premised on a Federal Acquisition

---

[1] Doc. 209 at 5.

Regulation found at 48 C.F.R. § 52.203-13 ("FAR 52.203-13") that is incorporated by reference into the contracts. Relators contend that, when MDHI entered into the contracts, the company had no intent to comply with that provision and particularly its requirement that, "'in connection with the award, performance, or closeout of a relevant contract,'" MDHI was contractually required to report "'credible evidence that a principal, employee, agent, or subcontractor of the Contractor has committed a violation of Federal criminal law involving bribery or gratuity violations.'"[2]

The Court set forth that the elements of a fraudulent inducement claim under the False Claims Act are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."[3] As applied to Relators' claims, those elements require the following analysis (*see infra* Part I) and thus proof of the following elements (*see infra* Part II).

I.  **Application of Elements to Relators' Theory**

    A.  **A False Statement Made with Scienter**

To meet these elements, Relators must show that MDHI's contracts with the Army incorporated FAR 52.203-13. Relators must further show that MDHI "**intended not to comply** with [the reporting provision] **when it entered into the**

---

[2] Doc. 209 at 25-26 (alterations omitted) (quoting FAR 52.203-13).
[3] *Id.* at 15 (quoting *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006)).

2

*contracts*."[4] (Emphasis added.) To show that MDHI intended not to comply with the reporting provision, Relators must show that, at the time it entered into the contract, MDHI (a) knew of and understood the requirements of the reporting provision in FAR 52.203-13, and (b) nevertheless intended not to comply with it.

Relators must further prove a violation of the provision by showing that MDHI thereafter engaged in "***prompt, substantial nonperformance***" of its reporting obligation.[5] (Emphasis added.) Accordingly, while we explain below the nature of the reporting obligation, a violation of the reporting obligation is insufficient. The "fact that a promise made is subsequently not performed" gives rise to "no inference of fraudulent intent not to perform."[6]

FAR 52.203-13 contains a provision that MDHI—i.e., the "Contractor"—is required to report "'credible evidence that a principal, employee, agent, or subcontractor of the Contractor has committed" certain violations of federal law.[7] The reporting obligation extends only to criminal violations "in connection with the award, performance, or closeout of a contract."[8] The Court has determined that the

---

[4] Doc. 209 at 18-19 n.5 (quoting Doc. 120 at 26-27). The "fact that a promise made is subsequently not performed" gives rise to "no inference of fraudulent intent not to perform." *United States v. Shah*, 44 F.3d 285, 293 n.14 (5th Cir. 1995) (internal quotation marks omitted); *see U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 503 (S.D. Tex. 2003), *aff'd*, 111 F. App'x 296 (5th Cir. 2004); Restatement (Second) of Torts § 530 (1977).
[5] Doc. 209 at 23 (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003)).
[6] *Shah*, 44 F.3d at 293 n.14.
[7] Doc. 209 at 25-26 (alterations omitted) (quoting FAR 52.203-13).
[8] *Id.* at 25 (alterations omitted) (quoting FAR 52.203-13).

"in connection with" standard requires that "the alleged criminal activity 'concerned,' was 'with reference to,' and bore a 'relationship [or] association' to the contracts at issue."[9] In the context of this case under the Court's summary judgment opinion, the remaining theories as to the alleged reportable violations of federal criminal law are "bribery or gratuity violations."[10]

Bribery: To establish that MDHI had credible evidence that a principal or employee had committed a criminal bribery violation under 18 U.S.C. § 201 in connection with the award, performance, or closeout of the El Salvador or SANG contracts, or in connection with the award of the Costa Rica contract,[11] Relators must prove that there was a *quid pro quo*. That is, MDHI, with corrupt intent, gave or offered a thing of value to Colonel Vergez or a third party in exchange for COL Vergez's agreement to take an official action in the future.[12] It is not sufficient that

---

[9] *Id.* at 26 n.10 (citation omitted).

[10] *Id.* at 26 (alterations omitted) (quoting FAR 52.203-13).

[11] Because Colonel Vergez was no longer at NSRWA (and so was no longer acting on behalf of the United States as to the Costa Rica contract and could not have taken an official act in connection with that contract) approximately one month before the Costa Rica contract was awarded to MDHI, Doc. 209 at 10-11, any alleged bribery or gratuity violation as to the Costa Rica contract could only occur in connection with the award of that contract, not its performance or closeout.

[12] 18 U.S.C. § 201(b)(1)(A); *United States v. Sun-Diamond Growers*, 526 U.S. 398, 404-05 (1999) ("[F]or bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act"; an "effort to buy favor or generalized goodwill from an official" does not suffice (emphasis in original)); *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013) ("[O]ne cannot agree to perform an act in exchange for payment when that act has already been performed. Therefore, if the agreement to exchange a thing of value for an act is made after that act has been performed, that agreement cannot be properly viewed as an agreement to offer or accept a bribe.")

a thing of value was provided simply to "buy favor or generalized goodwill from" COL Vergez or because COL Vergez had "the capacity to exercise governmental power or influence" in MD Helicopters' favor.[13] Nor is it sufficient that it was offered or given "solely for reasons of friendship or social purpose."[14] COL Vergez must have agreed to undertake a *specific* official action in exchange for that *specific* thing of value.[15]

Further, as the Supreme Court held in *McDonnell v. United States*, 136 S. Ct. 2355, 2369 (2016), an official act must relate to "a 'question' or 'matter' [that is] similar in nature to a 'cause, suit, proceeding or controversy.'" That is, a "question" or "matter" is "something that is relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete."[16] "Because a typical meeting, call, or event arranged by a public official is not of the same stripe as a lawsuit before a court, a determination before an agency, or a hearing before a committee, it does not qualify as a 'question' or 'matter' under § 201(a)(3)," the statutory definition of "official act."[17] Indeed, "expressing support" at a meeting, event, or call similarly does not qualify as an official act, as long as the public official

---

[13] *Sun-Diamond*, 526 U.S. at 404-05 (emphasis omitted).
[14] *Id*. at 413.
[15] *McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016) (explaining that "§ 201(a)(3) specifies that the public official must make a decision or take an action *on* that question or matter, or agree to do so" (emphasis added)).
[16] *Id*. at 2369.
[17] *Id*.

5

"does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act'" by that other public official.[18] Relators must prove that any pressure exerted or advice provided by COL Vergez was intended to form the basis of an official act by another public official.

Gratuity: A gratuity violation does not include the element of a *quid pro quo,* but to establish that MDHI had credible evidence that a principal or employee had committed a criminal gratuities violation under 18 U.S.C. § 201, Relators still must prove that there was a nexus, or "link," between a gift given or offered to COL Vergez and an official action by COL Vergez: that is, that MDHI gave or offered a specific thing of value as a reward for a specific decision made or to be made, or a specific action taken or to be taken, by COL Vergez.[19] And, given the reporting obligation at issue in this case, there must have been credible evidence of the gratuity having been given in connection with the award, performance, or closeout of the El

---

[18] *Id*. at 2371 ("Setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information, however, does not qualify as a decision or action on the pending question of whether to initiate the study. Simply expressing support for the research study at a meeting, event, or call—or sending a subordinate to such a meeting, event, or call—similarly does not qualify as a decision or action on the study, as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act.' Otherwise, if every action somehow related to the research study were an 'official act,' the requirement that the public official make a decision or take an action on that study, or agree to do so, would be meaningless.")

[19] *Sun-Diamond*, 526 U.S. at 414; 18 U.S.C. § 201(c)(1)(A); *see Sun-Diamond*, 526 U.S. at 408 (noting that it is only "when the violation is linked to a particular 'official act,' [that] it is possible to eliminate the absurdities through the definition of th[e] [statutory] term" (emphasis omitted)); *see also McDonnell*, 136 S. Ct. at 2372.

Salvador or SANG contracts, or in connection with the award of the Costa Rica contract.

As with bribery, it is not sufficient for the gift to have been given to "buy favor or generalized goodwill from" COL Vergez, because COL Vergez had "the capacity to exercise governmental power or influence" in MD Helicopters' favor, or "solely for reasons of friendship or social purpose."[20] Instead, the gift must have been given specifically because of or for a specific official act, as the Supreme Court analyzed that term in *McDonnell*, as discussed above.

Finally, to show "substantial nonperformance" by MDHI of its reporting duty,[21] Relators must show that MDHI's interpretation of that legal duty (including its application of the "credible evidence" standard to the facts it knew) was objectively false, as a reasonable interpretation as to an ambiguous regulatory provision is insufficient to establish falsity under the FCA.[22]

---

[20] *Sun-Diamond*, 526 U.S. at 404-05, 413.
[21] Doc. 209 at 23.
[22] *United States v. Whiteside*, 285 F.3d 1345, 1351 (11th Cir. 2002) ("In a case where the truth or falsity of a statement centers on an interpretive question of law, the government bears the burden of proving beyond a reasonable doubt that the defendant's statement is not true under a reasonable interpretation of the law."); *see United States v. Aseracare*, 938 F.3d 1278, 1297 (11th Cir. 2019); *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 836-37 (7th Cir. 2011) (asserting in a case about a contract for sale of aircraft to a foreign country that "[a] statement may be deemed 'false' for purposes of the [FCA] only if the statement represents 'an objective falsehood'"). To the extent that the Court analyzed the issue of objective falsity differently in its summary judgment decision, *see* Doc. 209 at 26-30, MDHI directs the Court to its Trial Brief filed today and the discussion at pages 1-5.

B.     **Materiality**

Relators must show that MD's allegedly false representation of its intent to comply with the reporting obligation had "a natural tendency to influence" the U.S. Army to enter into the contract with MDHI, considering "the effect [of that representation] on the likely or actual behavior" of the U.S. Army.[23]

C.     **Causation**

Separate from materiality, Relators must prove "both actual and proximate cause."[24] That means Relators must show that the allegedly false representation by MDHI in fact caused or induced the government to enter into the contract, such that "but for the misrepresentations, the government would not have awarded the contract and would not have paid the claim."[25] Relators must also show that the allegedly false representation by MDHI was the legal or proximate cause, meaning that the government entering the contract was "a reasonably foreseeable consequence" of the misrepresentation.[26] Relators have not proven this element if they show ***only*** that the false representation was capable of influencing the government's decision or that it

---

[23] Doc. 209 at 17.
[24] *U.S. ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 420 (D.C. Cir. 2021).
[25] Doc. 209 at 16; *Cimino*, 3 F.4th at 419; *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 8 (1st Cir. 2016).
[26] *Jackson v. Sauls*, 206 F.3d 1156, 1168 n.16 (11th Cir. 2000).

was a substantial factor in the government's decision, and not that it actually caused the government to enter into the three contracts at issue.[27]

### D. Payment of Money Due/Damages

Relators must show the actual loss or injury sustained by the government because of the contract, as measured by the difference, if any, in the value of what the government received as compared to the value of what the government would have received through the contract and related transactions in the absence of the false promise made in connection with that contract.[28]

## II. Elements of Relators' Claim

Relators must accordingly prove the following elements in order to state a claim on any of the contracts:

---

[27] Doc. 209 at 17-18; *Cimino*, 3 F.4th at 420 ("Cimino was required to plead actual causation under a but-for standard. Accordingly, we reject Cimino's argument that he needed to plead **only** proximate cause under the substantial factor test.")

[28] *United States v. Anchor Mortgage Corp.*, 711 F.3d 745, 748-51 (7th Cir. 2013) (deducting from damages government's proceeds in related sale of collateral on loan guarantees subject to FCA claim before applying multiplier); *see United States v. Bornstein*, 423 U.S. 303, 316 n.13 (1976) ("The Government's actual damages are equal to the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality."); *U.S. ex rel. Wall v. Circle C Const., LLC*, 813 F.3d 616, 617 (6th Cir. 2016) ("Actual damages are the difference in value between what the government bargained for and what the government received. Here the government bargained for two things: the buildings, and payment of Davis-Bacon wages. It got the buildings but not quite all of the wages. The shortfall was $9,916. That amount is the government's actual damages."); *Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429, 434 (Fed. Cl. 1994) (government not entitled to damages because it failed to show difference in value between what it paid for and what it received), *aff'd*, 57 F.3d 1084 (Fed. Cir. 1995); *cf. Cimino*, 3 F.4th at 425-426 (Rao, J., concurring) (noting FCA does not provide for recovery for non-false claims submitted pursuant to fraudulently induced contracts).

(1) The contracts at issue contained FAR 52.203-13. MDHI therefore promised, at the time it entered into the contract at issue, that it would "timely disclose … whenever, in connection with the award, performance, or closeout of th[e] contract … [MDHI had] credible evidence that a principal [or] employee [of MDHI] … committed [a] violation of Federal criminal law involving … bribery[] or gratuity violations found in Title 18 of the United States Code;"

(2) ***MDHI intended not to comply with that promise***, meaning that MDHI either (a) already knew of credible evidence that MDHI had committed a criminal bribery or gratuity violation in connection with the award of that contract that MDHI did not intend to promptly report, *or* (b) knew that in the future there would be credible evidence of MDHI's committing a criminal bribery or gratuity violation in connection with the performance or closeout of the contract and MDHI did not intend to promptly report that violation once it occurred.

    (c) For bribery, this in turn requires credible evidence of a *quid pro quo*, wherein an MDHI employee, agent, or principal with corrupt intent gave or offered to give a thing of value to COL Vergez or a third person in exchange for COL Vergez's commission of an official act.

(d) For gratuity, this requires credible evidence that an MDHI employee, knowingly gave or offered to give a thing of value to COL Vergez for or because of COL Vergez's commission of an official act, meaning that there was a "link" or nexus between the thing of value and the official act.

(3) MDHI subsequently did not report objectively verifiable instances of credible evidence of a bribery or gratuity violation sufficient to amount to ***prompt, substantial nonperformance*** of the contractual representation.

(4) MDHI's false representation of its intent to perform had "a natural tendency to influence" the U.S. Army to enter into the contract with MDHI, considering "the effect [of that representation] on the likely or actual behavior" of the U.S. Army;

(5) MDHI's false representation of its intent to perform both (a) in fact caused the government to enter into the contract, such that "but for the misrepresentations, the government would not have awarded the contract and would not have paid the claim," and (b) was a proximate, or legal, cause of the government's entering into the contract; and

(6) The Government paid out money on the contracts and sustained an actual loss or injury as measured by the difference, if any, in the value of what the

government received as compared to the value of what the government would have received through the contract and related transactions in the absence of the false promise.

Dated:   August 30, 2021

**BRADLEY ARANT BOULT CUMMINGS LLP**

By: */s/ J. Bradley Robertson*

| | |
|---|---|
| J. Bradley Robertson | Charles A. Stewart III |
| 1819 5th Avenue North | Jonathan C. Hill |
| Birmingham, AL 35203 | 445 Dexter Avenue, Suite 9075 |
| Tel: 205-521-8188 | Montgomery, AL 36104 |
| Fax: 205-488-6188 | Tel: 334-956-7700 |
| brobertson@bradley.com | Fax: 334-956-7701 |
| | cstewart@bradley.com |
| Kimberly Bessiere Martin | rhill@bradley.com |
| 200 Clinton Avenue West | |
| Suite 900 | |
| Huntsville, AL 35801 | |
| Tel: 256-517-5155 | |
| Fax: 256-517-5255 | |
| kmartin@bradley.com | |

Kristina A. Reliford
1600 Division Street, Suite 700
Nashville, TN 37138
Telephone: (615) 252-3573
Facsimile: (615) 252-6380
kreliford@bradley.com

*Counsel for Defendant MD Helicopters, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

>*/s/ J. Bradley Robertson*
>J. Bradley Robertson