IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. PHILIP MARSTELLER and<br>ROBERT SWISHER,<br><br>    Plaintiffs/Relators,<br><br>v.<br><br>LYNN TILTON and MD<br>HELICOPTERS, INC.,<br><br>    Defendants. | CIVIL ACTION NO.<br><br>5:13-cv-00830-AKK<br><br>**Jury Trial Requested** |

## RELATORS' RESPONSE TO MD HELICOPTERS' TRIAL BRIEF

On August 30, 2021, MD Helicopters ("MDHI") filed its Trial Brief (Doc. 224) and its Statement of Essential Elements (Doc. 223), the latter of which directed the Court to MDHI's Trial Brief (Doc. 223 at 7, n.22). Pursuant to the Court's Standard Pretrial Procedures, Relators respond to particular portions of MDHI's briefing that provide incorrect standards and elements pertaining to Relators' claims.

(1) **MDHI's false statements and fraudulent course of conduct do not reflect a reasonable difference of opinion as to an unambiguous regulatory requirement.**

In the view of many False Claims Act defendants, following the law is just too tricky, so they cite *AseraCare* looking to be bailed out for fraud. *See* Doc. 224 at 1-4. The jury in this action will decide whether, at the time MDHI promised to comply with the Contractor Code of Business Ethics and Conduct, FAR § 52.203-13, MDHI made a false statement with requisite scienter. Juries are asked every day in this country to determine whether a defendant lied or committed fraud. *See United States v. Shah*, 44 F.3d 285, 294 (5th Cir.

1995) ("[W]hether a defendant intended to perform is a question of fact concerning the defendant's state of mind."). Those juries look to what the defendant knew at the time of the false statement, and they "routinely [rely] on circumstantial evidence to support such false-promise determinations." *Id.* at 295. Here, the jury will be presented a stream of evidence showing MDHI and its CEO knew MDHI was violating its own policies that stemmed directly from FAR § 52.203-13. The jury will see the information known to MDHI and its CEO at the time MDHI promised to alert the appropriate authorities of credible evidence of fraud, bribery, conflicts of interest, and gratuity violations. Relators suspect the jury will have no difficulty determining that MDHI lied when it agreed to follow the law and alert authorities to critical information.[1]

Nor is the Contractor Code of Business Ethics and Conduct, FAR § 52.203-13, ambiguous. In fact, the evidence will show that MDHI had no questions about what the law required when it incorporated FAR § 52.203-13 into its own policies. And the evidence will show that MDHI's leaders were alerted on multiple occasions to illegal conduct surrounding COL Vergez, but, instead of investigating and following its own policies, MDHI buried it. To the extent MDHI wishes to present its own evidence as to why it did not investigate or report information to the authorities as required by the law and its contracts, those arguments will go to scienter, not falsity.

---

[1] If a defendant can be held criminally liable for a false promise made to the Government, it follows that civil liability should not hinge on more strenuous proof requirements. *See Shah*, 44 F.3d at 292 (discussing caselaw "in which this Court has upheld convictions for making false promises in violation of [18 U.S.C. § 1001].").

2

### (2) Relators are not required to prove specific intent to defraud, only knowledge as defined under the False Claims Act.

MDHI argues in its Trial Brief that Relators must prove "intent not to comply" with FAR § 52.203-13. Doc. 224 at 5-7. MDHI argues that "actual intent, not recklessness, is the scienter required[.]" *Id.* at 4, n.4. As the Court has recognized, however, "'[P]roof of specific intent to defraud' is unnecessary." Doc. 209 at 16 (quoting 31 U.S.C. § 3729(b)(1)). The Court has already rejected MDHI's heightened scienter argument, recognizing that the statutorily defined scienter requirement under the FCA is "knowingly." Doc. 209 at 16. The Court correctly found that the FCA defines the scienter standard of "knowingly" to include "actual knowledge," "deliberate ignorance," or "reckless disregard for the truth or falsity of the information." *Id.* (quoting 31 U.S.C. § 3729(b)(1)). Simply put, if MDHI is shown to have recklessly disregarded whether it was true it would comply with FAR § 52.203-13, Relators have met their scienter burden.

MDHI bolds mentions of "intend" in its Trial Brief. Doc. 224 at 6-7. The Court correctly recognized that Relators' fraudulent inducement theory alleges that MDHI "falsely represented that [it] intended to comply with FAR § 52.203-13[.]" Doc. 209 at 14. That "intentionality" is not a heightened scienter requirement; to the contrary, it is simply the promise MDHI made each time it signed a contract incorporating the regulation as a material term. In other words, each time MDHI signed one of the three FMS contracts at issue, its signature was a statement that it would comply with FAR § 52.203-13. The word "intended" cannot be stretched to mean a specific intent not to comply—such a construction would be at odds with the Congressionally mandated "knowingly" requirement in the FCA. Here, of course, MDHI knew what the law required, had

3

reportable information in hand, and continued to tell the U.S. Army it would comply with a law MDHI was already breaking.  Even if MDHI's heightened scienter standard were the law (it is not), Relators' evidence meets it.

       (3)    **"Prompt, Substantial Nonperformance" is easily established here.**

The Court, relying on *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003), held that Relators must show MDHI promptly and substantially failed to comply with the reporting requirements under FAR § 52.203-13.  Doc. 209 at 23.  This is not a difficult lift for Relators in this case because MDHI admitted in discovery that it *never* made a disclosure to the appropriate authorities under FAR § 52.203-13.  In other words, MDHI's noncompliance with FAR § 52.203-13 was immediately, absolute, and continuous.

       (4)    **MDHI's take-aways from *McDonnell* miss the mark.**

In its Statement of Essential Elements, MDHI erroneously contends that the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016) requires the Relators to link each bribe to a specific official action.  Doc. 223 at 5-6.  But as this Court and the Eleventh Circuit have held, *McDonnell* did not eliminate the well-established "retainer" or "stream-of-benefits" theory of bribery.  *United States v. Gilbert*, 355 F. Supp. 3d 1168, 1178 (N.D. Ala. 2018) ("*McDonnell* did not disturb the well-accepted 'retainer' theory of bribery[.]") (Kallon, J.), *aff'd sub nom. United States v. Roberson*, 998 F.3d 1237 (11th Cir. 2021) ("[A]lthough *McDonnell* specified that the 'question or matter' to be influenced must be identified, that case did not reject the retainer theory of bribery."); *see also United States v. Percoco*, No. 16-CR-776 (VEC), 2019 WL 493962, at *7 (S.D.N.Y.

4

Feb. 8, 2019) ("To this Court's knowledge, every court that has considered this issue has held that *McDonnell* did not overrule the retainer theory—an unsurprising result, given the clear distinction between the definition of an 'official act' and the timing with which the act must be identified."). Under that theory, Relators are not required to connect a specific bribe with a specific official act. Instead, the "quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998); *see also United States v. Rosen*, 716 F.3d 691, 698 n.3. & 700 (2d Cir. 2013) ("We have made it crystal clear that the federal bribery statute[] that Rosen was convicted of violating criminalize 'scheme[s] involving payments at regular intervals in exchange for specific official[ ] acts as the opportunities to commit those acts arise,' even if 'the opportunity to undertake the requested act has not arisen,' and even if the payment is not exchanged for a particular act but given with the expectation that the official will 'exercise particular kinds of influence.'") (citation omitted)).

So here, it is sufficient for Relators to proffer credible evidence that MDHI, acting through CEO Tilton and others, offered Vergez a job (whether with MD, Patriarch, or both) or other benefits for his influence with respect to MDHI's existing or future contracts FMS contracts. Indeed, courts have consistently recognized that the expectation of a job can be a bribe. *See e.g.*, *United States v. Biaggi*, 909 F.2d 662, 685 (2d Cir. 1990) (holding that "the jury could reasonably find that the job promise was more than a gratuitous offer of post-government employment, it was a bribe accepted by Neglia in exchange for his willingness to be influenced in performing his duties for Wedtech's benefit.").

5

An illegal gratuity under 18 U.S.C. § 201, by contrast, does not require a *quid pro quo*. *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 405, 119 S. Ct. 1402, 1406, 143 L. Ed. 2d 576 (1999). Instead, it is sufficient to show an award for some past or future act of the public official. *Id*. It is clear that Vergez's actions in this case—for instance, moving up MDHI's payments on multiple contracts, promising quick contract turnarounds, sending Army personnel to MDHI in an attempt to justify, post hoc, advanced payments, clearing contracting bottlenecks, allowing MDHI to submit RFI information after a deadline—all constitute official acts within the meaning of *McDonnell*. *McDonnell*, 136 S. Ct. at 2371.

 (5) **MDHI's Damages Measure is Not Correct.**

In its Statement of Essential Elements, MDHI provides an inaccurate recitation of the appropriate measure of damages in this action. MDHI states that damages are measured by the difference "in the value of what the government received as compared to the value of what the government would have received through the contract and related transactions in the absence of the false promise made in connection with that contract." Doc. 223 at 9. However, as the Court held in its Summary Judgment Opinion, "when 'a contractor's ultimate claims for payment' are grounded in fraud, then **all 'subsequent claims are false []because of an *original fraud* (whether a certification or otherwise).[]'**" Doc. 209 at 15 (quoting *Marsteller*, 880 F.3d at 1314) (bolded emphasis added).[2] There is no fact dispute about the amounts paid by the Government under the relevant contracts.

---

[2] Likewise, because the number of payments to MDHI under the relevant contracts is not in dispute, and because all claims are false that stem from an original fraud, the number of false claims is not in dispute if the jury finds for Relators on their fraudulent inducement claims. The Court would assess an appropriate per-claim penalty under the False Claims Act.

In addition, the Eleventh Circuit does not agree with MDHI's damages measure, having held:

> In this case, the district court here did not abuse its discretion in assessing damages for all the money the Anghaies earned through their false claims. There is 'no set formula for determining the government's actual damages' for an FCA claim. *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir.1988). Generally, the measure is 'the difference between what the government actually paid on the fraudulent claim and what it would have paid had there been fair, open and competitive bidding.' *Id*. **A defendant may also be liable for intangible harm: in *Killough* we held that kickbacks paid in exchange for government contracts caused a 'diminution in the public's confidence in the government,' even if the defendants may have won the contracts anyway as the lowest bidder.** *Id*.
> 
> . . .
> 
> [W]here the defendant fraudulently sought payments for participating in programs designed to **benefit third-parties rather that the government itself**, the government can easily establish that it received nothing of value from the defendant and **that all payments made are therefore recoverable as damages**.

*United States v. Anghaie*, 633 F. App'x 514, 518 (11th Cir. 2015) (emphasis added); *see also United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 473 (5th Cir. 2009) (calculating damages as the amount the government paid to the defendants where "[t]he contracts entered . . . did not produce a tangible benefit" to the government and were instead part of a grant program designed to award money to deserving small businesses).  The parties do not dispute that the United States Government did not receive the helicopters or services under the relevant contracts.  Because the Government itself received nothing of value in its bargain with MDHI and the fraud subverted the integrity and purpose of the FMS program, the appropriate measure of damages for the Court to apply is "all payments made."

Respectfully submitted September 6, 2021, by:

| | |
|---|---|
| **HALUNEN LAW PLLC** | **WARREN BENSON LAW GROUP** |
| By: */s/ Gerald C. Robinson* | By: */s/ Phillip E. Benson* |
|     Gerald C. Robinson (pro hac vice) |     Phillip E. Benson (pro hac vice) |
|     MN Attorney ID# 0212787 |     MN Attorney ID #0394772 |
|     IDS Center, Suite 1650 |     620 Newport Center. Dr., Ste. 1100 |
|     Minneapolis MN 55402 |     Newport Beach, CA 92660 |
|     Tel.: 612-605-4098 |     Tel: (952) 955-3688 |
|     Fax: 612-605-4099 |     Fax: (858) 454-5878 |
|     robinson@halunenlaw.com |     philbenson@warrenbensonlaw.com |

**REESE MARKETOS LLP**

By: */s/ Joshua M. Russ*
    Joel W. Reese (pro hac vice)
    Texas Bar No. 00788258
    joel.reese@rm-firm.com
    Pete Marketos (pro hac vice)
    Texas Bar No. 24013101
    pete.marketos@rm-firm.com
    Adam C. Sanderson (pro hac vice)
    Texas Bar No. 24056264
    adam.sanderson@rm-firm.com
    Joshua M. Russ (pro hac vice)
    Texas Bar No. 24074990
    josh.russ@rm-firm.com
    Andrew O. Wirmani (pro hac vice)
    Texas Bar No. 24052287
    andrew.wirmani@rm-firm.com
    Brett S. Rosenthal (pro hac vice)
    Texas Bar No. 24080096
    brett.rosenthal@rm-firm.com
    Allison N. Cook (pro hac vice)
    Texas Bar No. 24091695
    allison.cook@rm-firm.com
    750 N. St. Paul Street, Suite 600
    Dallas, TX 75201

**MASTANDO & ARTRIP LLC**

By: */s/ Dennis A Mastando*
    Dennis A Mastando
    301 Washington Street, Suite 302
    Huntsville, AL 35801
    Tel:256-532-2222
    Tony@mastandoartrip.com

*Attorneys for Qui Tam Relators
Philip Marsteller and Robert Swisher*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 6th day of September 2021, the foregoing document was submitted to the clerk of the U.S. District Court, Northern District of Alabama. I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).

                              */s/ Joshua M. Russ*
                              Joshua M. Russ