IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. PHILIP MARSTELLER and ROBERT SWISHER, <br><br> Plaintiff <br><br> vs. <br><br> LYNN TILTON and MD HELICOPTERS, INC., <br><br> Defendants. | Civil Action No. <br><br> 5:13-cv-00830-AKK |

**MD HELICOPTERS, INC.'S RESPONSE TO RELATORS' TRIAL BRIEF**

Defendant MD Helicopters, Inc. ("MDHI") submits the following response to Relators' Trial Brief.

**I.      The Jury Must Decide Materiality.**

MDHI respectfully objects that the Court's decision on the materiality of FAR 52.203-13 at summary judgment was improperly decided. As the Court recognized, MDHI's motion did not argue for judgment on the materiality of FAR 52.203-13. *See* Doc. 178; Doc. 209 at 20 ("[T]he defendants do not explicitly argue that this provision is immaterial."). In its opinion, the Court incorrectly states that MDHI raised the issue in its reply—which it did not—and cites to MDHI's discussion of materiality in the *pretrial order*. Doc. 209 at 20 n.6. But MDHI did not argue the

1

materiality of FAR 52.203-13 in its motion or in its reply. Docs. 178 & 190. Based on the incorrect statement that MDHI raised the argument in its reply, the Court found that the materiality of FAR 52.203-13 was raised untimely and waived. Doc. 209 at 20 n.6. The Court stated that if MDHI had not waived the argument—which it did not—then "an issue of fact would remain as to materiality." *Id*. Since the argument was not waived, an issue of fact remains for the jury.

MDHI did not waive the materiality of FAR 52.203-13 by not raising it on summary judgment. Summary judgment is appropriate for issues for which there are no genuine issues of material fact. Fed. R. Civ. P. 56(a). If a party believes there are issues of material fact for an element of a claim, the party need not raise that issue on summary judgment. It is not the case that the issue is then waived.

While the Court may grant summary judgment for a nonmovant or on grounds not raised in a motion, it may only do so "[a]fter giving notice and a reasonable time to respond," which MDHI was not given here. Fed. R. Civ. P. 56(f); *Karlson v. Red Door Homes, LLC*, 553 Fed. App'x 875, 877–78 (11th Cir. 2014) (vacating summary judgment on grounds not argued by movant where court did not provide adequate notice to the parties that it intended to address the issue).

## II. The United States Was Not Damaged.

Relators attempt to evade their burden to prove damages by asserting that damages are the full value of the contracts as a matter of law, but their argument

2

relies on a misreading of the law. The actual measure of False Claims Act ("FCA") damages in a contracting case is the difference between what the government actually paid and what it would have paid had there been fair, open and competitive bidding. *United States v. Anghaie*, 633 Fed. App'x 514, 518 (11th Cir. 2015); *see also United States v. Bornstein*, 423 U.S. 303, 316 n.13 (1976) ("The Government's actual damages are equal to the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality."). This has been described as the difference in value between what the government bargained for and what it received. *U.S. ex rel. Wall v. Circle C Constr., LLC*, 813 F.3d 616, 617 (6th Cir. 2016) ("Here, the government bargained for two things: the buildings, and payment of Davis–Bacon wages. It got the buildings but not quite all of the wages. The shortfall was $9,916. That amount is the government's actual damages."). In this case, the government received the full value of its bargain for each contract and was also protected against loss in the first place for two of the contracts because foreign nations provided all of the funding.

    **A.    Whether the Government Received the Full Value of Its Bargain under Each Contract Is a Jury Question.**

The government sustained no damages because it got the benefit of its bargain. To calculate damages, the value that the government received is subtracted from the loss amount before statutory trebling. *United States v. Anchor Mortg. Corp.*, 711 F.3d 745, 748–51 (7th Cir. 2013). Any amount the government paid as a result of a

fraudulently induced contract must be reduced—before trebling—by the value of the helicopters and support services that the government received from MDHI. *Id*.

Here, the government derived the negotiated benefit from the contracts. It received quality MDHI helicopters. Relators have never suggested that MDHI provided faulty helicopters or services. It does not matter "whether in some hypothetical scenario the government would have withheld payment" because the relevant question is "more prosaically, whether the government in fact got less value than it bargained for." *Wall*, 813 F.3d at 618. Here, there are no damages because the government received its bargained value in full. *Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429, 434 (Fed. Cl. 1994) (government not entitled to damages because it failed to show difference in value between what it paid for and what it received), *aff'd*, 57 F.3d 1084 (Fed. Cir. 1995), *abrogated on other grounds by Kellogg Brown & Root Servs., Inc. v. United States*, 99 Fed. Cl. 488 (Fed. Cl. 2011).[1]

Relators argue that damages are the full value of the contracts, Doc. 222 at 3–4, but that is improper where the government benefitted from the contracts. Their argument relies on cases where defendants falsely claimed to belong to a group to participate in a government program designed to benefit that group. *See Anghaie*,

---

[1] If successful in proving their claims, Relators are entitled only to statutory penalties under 31 U.S.C. § 3729(a)(1) because the government sustained no damages. It is of no moment that this method of calculation may fully offset the Relator's damages. Courts may award only statutory penalties when the government suffers no loss from an FCA violation. *See, e.g., id.; U.S. ex rel. Christianson v. Everglades Coll., Inc.*, No. 12-60185-CIV, 2014 WL 5139301, at *12 (S.D. Fla. Aug. 14, 2014).

633 Fed. App'x at 519 (involving fraudulently obtained research contracts designed to benefit small businesses).[2] There is no benefit to the government in these instances because the intended benefit was "to award money to eligible deserving small businesses." *U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 473 (5th Cir. 2009) (contrasting small business contracts with "standard procurement contracts where the government ordered a specific product or good"); *see also United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1279 (D.C. Cir. 2010) (discussing *Longhi*). Because the defendants were not actually small businesses, the government did not receive the intangible benefit for which it bargained. Relators' case is not comparable. The government bargained for MDHI to supply helicopters and associated services to our country's allies. That is what happened, and it is valuable to the government. *See, e.g.,* DX 317 (U.S. press release stating that the SANG contract "will contribute to the foreign policy and national security of the United States"). The government received precisely the value for which it bargained.

Other cases addressing contracts allegedly tainted from their inception have rejected awarding the full value of the contracts. In *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908 (4th Cir. 2003), a jury found a

---

[2] The trial court summarized: "The gist of the offense lies in the fact that the contracts at issue were reserved for legitimate small businesses and the defendants knowingly made misrepresentations to qualify for those contracts. There is a real and substantial harm to the government when funds set aside for small businesses are diverted to other uses." *United States v. Anghaie*, No. 1:12-cv-102-RS-GRJ, 2015 WL 163046, at *3 (N.D. Fla. Jan. 13, 2015).

government contract was tainted by a conflict of interest, and because there was "no evidence that the government did not get what it paid for," the trial court "correctly disallowed [Relator] from recovering disgorgement" of the full contract amount. *Id*. at 922–923 (4th Cir. 2003); *see also Sci. Applications Int'l*, 626 F.3d at 1278 ("This automatic equation of the government's payments with its damages is mistaken.").

Having suffered no actual loss, the government has sustained no damages and the jury should find any recovery by Relators is limited to statutory penalties.[3]

### B. The Court Should Decide that There Are No Damages for the Saudi Arabia ("SANG") and Costa Rica Contracts as a Matter of Law because the Foreign Countries Fully Funded Their Contracts.

The government also did not sustain any damages for the SANG or Costa Rica contracts because they were fully funded by the foreign purchasers. Foreign Military Sales contracts are governed by the Arms Export Control Act. 22 U.S.C. § 2751 *et seq*. Per that Act, the foreign nations must enter into an agreement "to pay the full amount of such contract **which will assure the United States Government against any loss** on the contract." 22 U.S.C. § 2762(a)(1) (emphasis added). The foreign nations must further "make funds available in such amounts and at such times as may be required to meet the payments required by the contract, and any damages

---

[3] Relators suggest in a footnote that "the number of false claims is not in dispute." Doc. 222 at 3 n.1. While MDHI and Relators do not dispute the number of *payments MDHI received*, it remains Relators' burden at trial to prove the number of *claims MDHI submitted*.

and costs that may accrue from the cancellation of such contract, in advance of the time such payments, damages, or costs are due." *Id*. § 2762(a)(2).

The Army has now confirmed that this happened for the SANG and Costa Rica contracts. Michael K. Crawford Decl. ¶ 7 (Sept. 2, 2021) ("[A]ll of the funds under the reviewed LOAs, associated with contract W58RGZ-13-C-0026, for the purchase of helicopters by Costa Rica, and contract W58RGZ-12-C-0105, for the purchase of helicopters by Saudi Arabia, were funded with money provided by the purchasing governments.") (attached as Exh. A).

Where a third party funds the contract, the government sustains no damages, and any FCA liability is limited to civil penalties. *See U.S. ex rel. Sanders v. American-Amicable Life Ins. Co.*, 545 F.3d 256, 259 (3d Cir. 2008) ("[A] party can be subject to FCA liability (i.e. civil penalties) even where the government suffers no monetary injury. This is so, for example, . . . where the government in essence passes on the cost of the false claim to a third party." (citations omitted)). Because the government is protected against loss by statute and the Army has now confirmed that the SANG and Costa Rica contracts were fully funded by these third parties, the Court should find no damages as a matter of law for the SANG and Costa Rica contracts and that the jury may only award penalties for these two contracts.

## III. The Jury Should Be Instructed on Bribery and Gratuity.

The relevant question for the jury is not whether MDHI had credible evidence of a bribery or gratuity violation; it is whether MDHI misrepresented its intention to comply with the reporting requirement in FAR 52.203-13 at the time the three contracts were executed. In making that determination, it will be relevant for the jury to determine at what point, if ever, MDHI reasonably believed it had credible evidence of a bribery or gratuity violation. *See* Doc. 224 at 3–4.

In determining whether bribery[4] occurred, several general concepts apply:

- Bribery requires proof of a *quid pro quo*—a specific intent to give or receive something of value *in exchange for* an identified official act. *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404–05 (1999) (emphasis in original).

- It is not sufficient that the thing of value is offered to curry favor or generalized goodwill because of the official's position. *See id.* at 405-08; *United States v. Silver*, 948 F.3d 538, 577 (2d Cir. 2020).

- Even under the retainer theory of bribery, the "official act" cannot be an "open-ended promise" and must relate to "***an identified*** 'question, matter, cause, suit proceeding, or controversy' at the time of the promise." *Silver*, 948 F.3d at 556, 559, 568 (emphasis added).[5]

---

[4] MDHI reserves the right to object at trial to references to bribery statutes other than 18 U.S.C. § 201 to the extent such references are unfairly prejudicial or have the danger of confusing the issues.

[5] Otherwise, "federal law might unconstitutionally criminalize '*any* effort to buy favor or generalized goodwill from an official who either has been, is, or may at some unknown, unspecified later time, be in a position to act favorably to the giver's interests.'" *Id.* at 554. This Court has previously recognized as such. *United States v. Gilbert*, 355 F.Supp.3d 1168, 1178–79 (N.D. Ala. 2018) (Kallon, J.) ("Defendants may be found guilty of bribery if the evidence is sufficient to show that Robinson '"underst[ood] that he [was] expected, as a result of [the Defendants'] payment, to exercise *particular kinds of influence* or to do *certain things* connected with his office as specific opportunities [arose].""" (emphasis added)).

While gratuities do not require a quid pro quo, they still require "*a link* between the gratuity and a ***specific*** 'official act.'" *United States v. McNair*, 605 F.3d 1152, 1190 (11th Cir. 2010) (emphasis added). An "effort to buy favor or generalized goodwill from an official" does not suffice. *Sun-Diamond Growers*, 526 U.S. at 405–06. Nor does a gift generally motivated "by the recipient's capacity to exercise governmental power or influence in the donor's favor." *Id*.

Accordingly, for both bribery and gratuity, there must be a basis to connect a gift or gifts to an identified official act or acts—i.e., an action on a specific "question, matter, cause, suit, proceeding or controversy." 18 U.S.C. § 201(a)(3); *Silver*, 948 F.3d at 559 (reversing convictions because "bribery requires more than . . . an open-ended promise to perform official actions 'for the benefit of the payor'").

## IV. The Jury Must Decide MDHI's Intent

While a corporation is liable for the actions and knowledge of its employees if they are "acting within the scope of their authority and for the purpose of benefiting the corporation," *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983), the jury must decide whether these conditions are met, *United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir. 1983) (holding that is proper to allow "the jury to consider [Defendant's] alleged antitrust compliance policy in determining whether the employees were acting for the benefit of the corporation").

The acts and knowledge of employees are not the only manifestation of corporate intent. *See Miss. Valley Portland Cement Co. v. United States*, 408 F.2d 827, 834 (5th Cir. 1969) (finding that resolutions adopted by the board of directors demonstrated corporate intent). To the extent that an employee acts contrary to corporate policy, both the actions and the policy must be considered in determining intent. *United States v. Beusch*, 596 F.2d 871, 877–78 (9th Cir. 1979) ("[A] corporation [m]ay be liable for acts of its employees done contrary to express instructions and policies, but . . . the existence of such instructions and policies may be considered in determining whether the employee in fact acted to benefit the corporation."); *see also Velsicol Chem. Corp. v. Parsons*, 561 F.2d 671, 675 (7th Cir. 1977) (implying the outcome for the defendant may have been different if it had produced "any corporate resolution or written document purporting to formalize" a different corporate intent than the actions of the employee).

## V. Certain of MDHI's Affirmative Defenses Present Jury Questions

MDHI has submitted affirmative defenses related to damages that present questions for the jury. Doc. 124 at 26 (Defenses 6, 8, and 10).[6] MDHI has also asserted several defenses that concern elements of claims for which Relators bear the burden of proof. *Id*. at 26-29 (Defenses 4, 5, 11, 13, 17, 19, 20, and 22).

---

[6] For the SANG and Costa Rica contracts, these defenses only present questions for the jury to the extent damages are not determined as a matter of law, as argued above in section II.B.

Dated:   September 6, 2021

**BRADLEY ARANT BOULT CUMMINGS LLP**

By: */s/ J. Bradley Robertson*

   J. Bradley Robertson
   1819 5th Avenue North
   Birmingham, AL 35203
   Tel: 205-521-8188
   Fax: 205-488-6188
   brobertson@bradley.com

   Kimberly Bessiere Martin
   200 Clinton Avenue West
   Suite 900
   Huntsville, AL 35801
   Tel: 256-517-5155
   Fax: 256-517-5255
   kmartin@bradley.com

Charles A. Stewart III
Jonathan C. Hill
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
Tel: 334-956-7700
Fax: 334-956-7701
cstewart@bradley.com
rhill@bradley.com

Kristina A. Reliford
1600 Division Street, Suite 700
Nashville, TN 37138
Telephone: (615) 252-3573
Facsimile: (615) 252-6380
kreliford@bradley.com

*Counsel for Defendant MD Helicopters, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ J. Bradley Robertson*
J. Bradley Robertson