IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. PHILIP MARSTELLER and<br>ROBERT SWISHER,<br><br>    Plaintiffs/Relators,<br><br>v.<br><br>MD HELICOPTERS, INC.,<br><br>    Defendant. | CIVIL ACTION NO.<br><br>5:13-cv-00830-AKK<br><br>**Jury Trial Requested** |

## RELATORS' TRIAL BRIEF RELATED TO
## POTENTIAL BIFURCATION OF LIABILITY AND DAMAGES

Before trial began on Monday, the Court noted the following with respect to its decision on the measure of damages in this matter:

> [T]he one stick-up that I have is, as the defendant points out, they did deliver some helicopters and intuitively, of course, in normal cases, those values of the helicopters should factor in the equation. This may be one of those special cases for reasons that you guys have pointed out. These were not things that the government directly received any benefit for.

Tr. Sept. 13, 2021, p. 1:9-16. Relators agree that the Government did not directly receive any benefit for the helicopters in this case, which makes it unique under FCA jurisprudence. Thus, this brief addresses the Court's questions and confirms, with ample case law and evidence, that traditional benefit-of-the-bargain damages are improper in this case.

**I. The appropriate measure of damages is the full amounts paid under the contracts.**

To be sure, "[b]asing damages on net loss is the norm in civil litigation." *United States v. Anchor Mortg. Corp.*, 711 F.3d 745, 749 (7th Cir. 2013). But as the Court suggested, this case is indeed a special case under the FCA for the reasons previously briefed.

*Id.* (recognizing that the benefit-of-the-bargain measure is not always appropriate in FCA cases). Here, this is a (1) fraudulent inducement case (2) involving a program designed to provide things of value to third parties where (3) the Government received and retained only intangible benefits.[1] In cases with these unique facts, courts hold (**without exception from Relators' research and defendant's filings**) that damages are the full amount paid by the Government as a result of the fraudulent inducement. These cases—including established Eleventh Circuit precedent—simply do not lend themselves to traditional benefit-of-the-bargain damages. *See United States v. Anghaie*, 633 F. App'x 514, 519 (11th Cir. 2015); *see also United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 52 (D.D.C.), aff'd, 709 F. App'x 23 (D.C. Cir. 2017); *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 91 (2d Cir. 2012); *United States v. Sci. Applications Int'l*, 626 F.3d 1257 (D.C. Cir. 2010); *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 573 (5th Cir. 2009); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir.2008); *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003).

Moreover, this case encompasses a *third*, unique case category under the FCA: cases involving transactions under laws implicating foreign relations. Here, the Government's benefit is an intangible, incalculable interest in cultivating foreign relations and maintaining its global reputation by providing a gold-standard acquisition process free of corruption. *See Foreign Military Sales (FMS)*, Defense Security Cooperation Agency, https://www.dsca.mil/foreign-military-sales-fms (last visited Sept. 16, 2021); *see also* Tr.

---

[1] *See* Tr. Sept. 13, 2021, p. 51:2-14 ("Q: So at the end of the day, the U.S. is left with – with nothing tangible after the transactions; is that fair? A: Correct. [The helicopters are] solely owned by the purchasing company.").

Sept. 13, 2021, p. 50:5-6 (explaining that the FMS program exists because "[i]t's a way for the government-to-government relationship to be developed" and "it helps on a political basis"). Relators have already established this fact:

> Q: Just tell the jury briefly what is the FMS process?
>
> A: So it's a process where a foreign military can use the resources of the U.S. government to provide helicopters in this case. It also allows the foreign government to have the integrity of the United States government behind the contract so they know they're getting a quality product. It also helps the foreign government avoid any appearance of corruption that may be present in a commercial sale.

Tr. Sept. 13, 2021, p. 47:14-21. MD elicited corroborating testimony on cross-examination:

> Q: FMS program allows foreign governments to purchase defense articles and services from the U.S. government; is that right?
>
> A: Yes.

Tr. Sept. 13, 2021, p. 206:3-7.

Where the Government's harm involves foreign relations, damages are measured by the full amounts paid under the relevant contracts. *See United States ex rel. Liotine v. CDW Gov't, Inc.*, No. 05-330DRH, 2012 WL 2807040, at *10-11 (S.D. Ill. July 10, 2012). In *Liotine*, the defendant contracted with the Government to sell the Government goods from foreign countries. *Id.* at *1. As a part of that contract, defendant "promised to comply with the [Trade Agreements Act] and sell only goods from trade-compliant countries." *Id.* at *9. Defendant failed to do so. *Id.*

There, the defendant argued that the Government sustained no damages because the relator could not show that any goods from non-compliant countries were worth less than

3

what the Government paid. *Id.* at *10. The Court disagreed, holding that "if defendant sold the government products in violation of the [Trade Agreement Act], then the correct measure of damages would be the entire amount paid for those products." *Id.* at *11. The court agreed that the goods delivered from non-compliant countries were not necessarily "of any less quality or value, **but that is not the interest that the [Trade Agreements Act] is designed to protect**." *Id.* (emphasis added). Rather, the Trade Agreements Act purposes include, among other things, fostering "the growth and maintenance of an open world trading system" and "expand[ing] the commerce of the United States in international trade." *Id.* Because these purposes could not "be accomplished if a party who has come to an agreement with the United States to abide by the [Trade Agreements Act] and only to sell from compliant countries is allowed to knowingly sell from non-compliant countries," the "**[defendant would] not be entitled to keep money obtained from the government under false pretenses**." *Id.* (emphasis added).

These authorities preclude MD's damage arguments that payments received by MD should be reduced by the value of the helicopters received by foreign countries; and/or (2) reduced by the amount of payments the United States received from the foreign countries. Neither the helicopters received by other countries nor any payments received by the United States equate to the Government's "benefit of the bargain" in FMS contracts. Rather, the Government "received and retained" only intangible benefits[2] related to its role and reputation in foreign relations. *United States v. Bornstein*, 423 U.S. 303, 317 n.13 (1976).

---

[2] MD relies heavily on the out-of-circuit case *United States v. Anchor Mortgage Corp.*, 711 F.3d 745 (7th Cir. 2013). But *Anchor Mortgage* is not a fraudulent inducement case involving a program designed to foster the United States' relationships with foreign nations. Additionally, in *Anchor Mortgage*, the

4

MD concedes that the Government received intangible benefits from the contracts yet appears to contend that those benefits support the application of benefit-of-the-bargain damages. *See* Resp. to Mot. in Limine, ECF No. 276, at 11 ("The government also retained the intangible benefits of the contract (i.e., foreign policy and national security) even after the helicopters were provided to our allies."). This proposition directly contradicts well-established precedent. *See* Anghaie, 633 F. App'x at 519; *see also Longhi*, 575 F.3d at 473 ("In a case such as this, where there is no tangible benefit to the government and the intangible benefit is impossible to calculate, it is appropriate to value damages in the amount the government actually paid to the [D]efendants."). Thus, the proper measure of damages is the full amounts paid under the contracts.

## II. The Court should determine the amount of damages as a matter of law, or, in the alternative, bifurcate the trial.

MD admits that the U.S. Army paid it under the relevant contracts. *See* Defs.' Interrogatories at 21-23 (Pls.' Ex. 233). MD admits the amounts paid. *Id.* Because there is no dispute on the amount of payments, the Court's determination of the appropriate legal measure of damages is critical to this case. "[W]here the question is not the benefit of the bargain between the plaintiff and the defendants, and the amount of each payment for which liability has been assessed is not in dispute, no further finding of fact as to the amount of the damages [is] necessary." *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78,

---

Government *received and retained* real property as collateral. This case does not involve any collateralized transactions. Thus, it is inapposite to this case.

91 (2d Cir. 2012). Backed by authorities in this circuit as well as authorities analogous to this FMS case, it is appropriate for the amount of damages to be fixed as the amounts of contract payments made by the Government under fraudulently induced contracts. *Id*. However, if the Court determines that the jury should making a factual finding regarding these undisputed amounts, Relators ask the Court to submit the following damages questions on the verdict form:

**El Salvador Contract**

- How much money, if any, did the United States Government pay to MD Helicopters under the El Salvador contract?

**SANG Contract**

- How much money, if any, did the United States Government pay to MD Helicopters under the SANG contract?

**Costa Rica Contract**

- How much money, if any, did the United States Government pay to MD Helicopters under the Costa Rica contract?[3]

If the Court declines Relators' approaches above, Relators request that the Court bifurcate liability and damages. This will give the Court additional time to evaluate this legal issue, and, in the event of no liability finding, pretermit the damages question altogether.

---

[3] Whether offset from damages—which must be done *after* trebling—is proper in this case is a more difficult question. *See United States v. Bornstein*, 423 U.S. 303, 316 (1976) (offset after trebling may be appropriate when defendant receives payments from third-parties). But here, MD has not produced any admissible evidence of payments to the United States from El Salvador, SANG, or Costa Rica related to the FMS contracts. In the event it does, the Court should—for each question—submit a second question: "How much money, if any, did [the relevant country] pay to the United States Government for the helicopters in question?" The Court would later offset the trebled damages by the amount paid from the foreign country.

Respectfully submitted September 16, 2021, by:

| | |
|---|---|
| **HALULEN LAW PLLC** | **WARREN BENSON LAW GROUP** |
| By: */s/ Gerald C. Robinson*<br>    Gerald C. Robinson (pro hac vice)<br>    MN Attorney ID# 0212787<br>    IDS Center, Suite 1650<br>    Minneapolis MN 55402<br>    Tel.: 612-605-4098<br>    Fax: 612-605-4099<br>    robinson@halunenlaw.com | By: */s/ Phillip E. Benson*<br>    Phillip E. Benson (pro hac vice)<br>    MN Attorney ID #0394772<br>    620 Newport Center. Dr., Ste. 1100<br>    Newport Beach, CA 92660<br>    Tel: (952) 955-3688<br>    Fax: (858) 454-5878<br>    philbenson@warrenbensonlaw.com |
| **REESE MARKETOS LLP** | **MASTANDO & ARTRIP LLC** |
| By: */s/ Allison N. Cook*<br>    Joel W. Reese (pro hac vice)<br>    joel.reese@rm-firm.com<br>    Pete Marketos (pro hac vice)<br>    pete.marketos@rm-firm.com<br>    Adam C. Sanderson (pro hac vice)<br>    adam.sanderson@rm-firm.com<br>    Joshua M. Russ (pro hac vice)<br>    josh.russ@rm-firm.com<br>    Andrew O. Wirmani (pro hac vice)<br>    andrew.wirmani@rm-firm.com<br>    Brett S. Rosenthal (pro hac vice)<br>    brett.rosenthal@rm-firm.com<br>    Allison N. Cook (pro hac vice)<br>    allison.cook@rm-firm.com | By: */s/ Dennis A Mastando*<br>    Dennis A Mastando<br>    301 Washington Street Suite 302<br>    Huntsville, AL 35801<br>    Tel:256-532-2222<br>    Tony@mastandoartrip.com |

*Attorneys for Qui Tam Relators*
*Philip Marsteller and Robert Swisher*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 16th day of September, 2021, the foregoing document was submitted to the clerk of the U.S. District Court, Northern District of Alabama, using the electronic case filing system (CM/ECF) of the court. I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).

                                           */s/ Allison N. Cook*
                                           Allison N. Cook