IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
2021 SEP 24 P 12:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. PHILIP MARSTELLER and ROBERT SWISHER, <br><br> Plaintiffs/Relators <br><br> vs. <br><br> MD HELICOPTERS, INC., <br><br> Defendant. | Civil Action No. <br><br> 5:13-cv-00830-AKK |

## JURY INSTRUCTIONS

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished, and the lawyers finish their closing arguments, you will go to the jury room and begin your discussions – what we call your deliberations.

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must

be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their authority as employees of the corporation.

In your deliberations you should consider only the evidence – that is, the testimony of the witnesses and the exhibits I have admitted in the record – but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether

you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things

inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

In the course of this case, you have heard testimony about consulting with lawyers. MD Helicopters does not claim in this case a defense based on advice from or reliance on lawyers. Accordingly, you should not consider any testimony about the presence or involvement of lawyers that may have suggested that the presence of counsel blessed the conduct at issue.

You have also heard evidence about Colonel Vergez's plea of guilty in a criminal case against him. You may consider Colonel Vergez's testimony relating to his guilty plea for the limited purpose of assessing his credibility and assessing the factual circumstances of the conduct to which those pleas pertain. But you may not consider the mere fact of Colonel Vergez's guilty plea as evidence that MD Helicopters engaged in bribery, gratuity, or conflict of interest. The fact of Vergez's conviction by guilty plea which was entered years after the fact is not evidence of MD's knowledge at the time of the events in question.

Similarly, you should not consider whether there was a government investigation in determining whether the False Claims Act was violated by MD.

As I mentioned during the evidentiary phase of the case, this case is about whether MD Helicopters misrepresented its intention to comply with a regulatory provision at the time it signed the El Salvador, Saudi Arabia, and Costa Rica contracts. You have heard testimony about interactions between Colonel Vergez and Ms. Tilton regarding (1) the Armed Aerial Scout Program; (2) a Letter of Request and an Initial Capabilities Assessment concerning Iraq; (3) Pavel Borisov and his company Avia Baltika and the Mi-17 helicopter; (4) the company AAL and the Mi-17 helicopter; and (5) a patent dispute between MD Helicopters and Boeing. This evidence is admitted and may be considered by you for the limited purpose of assisting you in determining whether MD, acting through its representatives, had a motive, a plan, or acted in preparation or the state of mind necessary to misrepresent its intention to comply with the regulatory provision at the time it signed the El Salvador, Saudi Arabia, or Costa Rica contracts. You may not consider this evidence for any other purpose, including as evidence that MD possessed credible evidence of bribery, gratuity, or conflict of interest violations at or around the time that it entered the three specific contracts at issue. FAR 52.203-13 is specific to reporting credible evidence of bribery, gratuities, or conflict of interest violations that are "in connection with the award, performance, or closeout" of each of the three contracts at issue. I will define "in connection with" later in these instructions.

In this case it is the responsibility of Relators Marsteller and Swisher to prove every essential part of their claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Relators' claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Relators.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Relators' claims by a preponderance of the evidence, you should find for MD Helicopters as to that claim.

This is a case under the False Claims Act. The False Claims Act allows a private citizen to bring an action in the name of the United States against any person who allegedly violates the False Claims Act. The private citizen who brings the

action on behalf of the government is called a "relator" and these cases are known as *"qui tam"* cases.

Under the False Claims Act, any person, including a corporation, who knowingly presents, or causes to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval or who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States Government, or who conspires to defraud the Government by getting a false or fraudulent claim approved or paid is liable to the United States Government.

A claim may be false in violation of the False Claims Act when a government contract was obtained in the first place because of a defendant's false statements or omissions. This is called fraudulent inducement.

There are three contracts at issue in this action:

(1) "The El Salvador Contract" refers to the December 9, 2011, FMS Contract between the U.S. Army and MD Helicopters for helicopters for the government of El Salvador;

(2) "The Saudi Arabia National Guard (SANG) Contract" refers to the June 29, 2012, FMS Contract between the U.S. Army and MD Helicopters for helicopters for the country of Saudi Arabia; and

(3) "The Costa Rica Contract" refers to the December 3, 2012, FMS Contract between the U.S. Army and MD Helicopters for helicopters for the government of Costa Rica.

In this case, Relators claim that MD Helicopters violated the False Claims Act by falsely promising the U.S. Army that MD Helicopters would comply with a regulatory reporting obligation included in each of the three contracts at issue. That obligation, referred to as the "Contractor Code of Business Ethics and Conduct," or FAR § 52.203-13, required MD Helicopters to inform the Government if it became aware of credible evidence that a principal, employee, or agent of MD Helicopters committed a violation of federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations in connection with the award, performance, or close-out of one of those three contracts.

MD Helicopters denies that it violated the False Claims Act.

To establish a violation is "in connection with" the award, performance, or close-out of a contract, it is sufficient for Relators to show that the alleged violation concerned, was with reference to, and bore a relationship to the contracts at issue.

To prove that MD Helicopters fraudulently induced the relevant contracts, Relators must prove the following by a preponderance of the evidence:

1) That MD Helicopters made a false statement or engaged in a fraudulent course of conduct;

8

2) That the false statement was made, or fraudulent course of conduct was undertaken, knowingly;

3) That the false statement or fraudulent course of conduct was material; and

4) That the false statement or fraudulent course of conduct caused the Government to pay out or forfeit moneys due.

"Knowingly" means the Defendant had actual knowledge, acted with deliberate ignorance to the truth or falsity of their statements, or recklessly disregarded the truth or falsity of the information. Relators are not required to show proof of specific intent to defraud.

For a false statement or fraudulent course of conduct to be "material," it must have a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

Causation refers to whether a defendant's false statement or fraudulent course of conduct caused the Government to pay out money or forfeit moneys due. A defendant's false statement, omission, or misrepresentation must cause or induce the Government to enter in a contract. In other words, but for the misrepresentations, the Government would not have awarded the contract and would not have paid the claim.

Causation is different from materiality, and the two must be separately proved. A statement may be material—that is, capable of influencing the government's decision to enter a contract—without causing the government to enter the contract.

You will need to consider separately whether Relators have proven each of these elements by a preponderance of the evidence in connection with each of the three contracts in this case.

FAR § 52.203-13 required MD Helicopters to inform the government if it became aware of credible evidence that a principal, employee, or agent of MD Helicopters had committed a violation of federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations, in connection with the award, performance, or closeout of one of those three contracts.

Here, Relators claim that MD Helicopters falsely promised to the government that it would comply with the requirements in FAR 52.203-13 to report credible evidence that a principal, employee, or agent of MD Helicopters committed a bribery, gratuity, or conflict of interest violation in connection with the award, performance, or close-out of one of the three contracts. MD Helicopters denies this allegation.

Credible evidence means something more than speculation or reasonable belief.

I will instruct you next on what the essential elements are for bribery, gratuities, and conflict of interest.

## Bribery

There are several bribery offenses relevant to this case. I explain them below:

The elements of public official bribery are:

1) that Defendant MD Helicopters directly or indirectly gave, offered, or promised something of value to Colonel Vergez when he was a public official; and

2) that Defendant MD Helicopters acted knowingly and corruptly, with intent to influence an official act.

Colonel Vergez prior to his retirement from the United States Army was a "public official."

Bribery requires proof of a quid pro quo—a specific intent to give or receive something of value in exchange for an official act.

The agreement for a bribe need not be express or "explicit."

Bribery may be based on a stream of benefits to the public official or to a third party whom the official favors, and the government does not need to establish that any specific benefit was given in exchange for a specific official act. Payments in violation of bribery law may be made with the intent to retain the public official's

11

services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf.

To act "corruptly" means to act knowingly and dishonestly for a wrongful purpose.

## Illegal Gratuities

It is a federal crime to give an illegal gratuity to a public official. The elements of the federal crime of illegal gratuity are:

1)  That MD Helicopters directly or indirectly gave, offered, or promised something of value to Colonel Vergez, a public official; and

2)  That MD Helicopters did so for or because of a specific official act performed by Colonel Vergez.

An illegal gratuity may constitute merely a reward for some specific future or past act by the official.

## Conflicts of Interest

It is a crime for a federal employee to benefit personally from an official action. The elements of establishing a conflict of interest are:

(1) that a person was an officer or employee of the executive branch or of an independent agency of the federal Government;

(2) that the person participated personally and substantially in his official, governmental capacity through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise;

(3) that the person did so in a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter; and

(4) that the person knew that a person or organization with whom he was negotiating or had an arrangement concerning prospective employment had a financial interest in that particular matter.

Negotiation is a communication between two parties with a view to reaching an agreement. Negotiation connotes discussion and active interest on both sides. Preliminary or exploratory talks do not constitute negotiation. Rather, to find negotiation, there must be a process of submission and consideration of offers.

As I mentioned in describing the elements for bribery and illegal gratuities, both require that the public official perform an "official act." To qualify as an "official act," the public official must have made a decision or taken an action or agreed to make a decision or take an action on a question, matter, cause, suit, proceeding, or controversy. The question, matter, cause, suit, proceeding, or controversy must involve the formal exercise of governmental power. It must be

similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific which requires particular attention by a public official.

The public official's decision or action or agreement to make a decision or take an action on that question, matter, cause, suit, proceeding, or controversy may include using his official position to exert pressure on another public official to perform an official act, or to advise another public official, knowing or intending that such advice will form the basis for an official act by another public official. But setting up a meeting, talking to another official, or attending, hosting, or organizing an event (or agreeing to do so), without more, is not an official act.

A person can commit a crime even without evidence that the person personally performed every act charged.

Ordinarily, any act a person can do may be done by directing another person, or "agent." Or it may be done by acting with or under the direction of others.

A person "aids and abets" another person if he or she intentionally joins with the other person to commit a crime.

A person is criminally responsible for the acts of another person if the person aids and abets the other person. A person is also responsible if he or she willfully directs or authorizes the acts of an agent, employee, or other associate.

14

But finding that a person is criminally responsible for the acts of another person requires proof that the person intentionally associated with or participated in the crime – not just proof that the person was simply present at the scene of a crime or knew about it.

A corporation will be liable for violations of the False Claims Act if its employees were acting within the scope of their authority and for the purpose of benefiting the corporation. Liability of a corporation for a False Claims Act violation may arise from the conduct of employees other than those with substantial authority and broad responsibility.

If you find that MD Helicopters violated the False Claims Act for any of these three contracts, then you must determine the amount of damages which the government sustained because of the acts of MD Helicopters.

There is no set formula for determining the government's actual damages for a False Claims Act claim. Generally, the measure is the difference between what the government actually paid on the fraudulent claim and what it would have paid had there been fair, open and competitive bidding.

A defendant may also be liable for intangible harm in situations where there may not be any financial loss, but where, for example, the relators prove that the defendant's conduct caused a diminution in the public's confidence in the government program at issue, or where the relators prove that the defendant's

conduct deprived the government of the benefits it intended to receive from the FMS program.

You may consider whether the government bargained for something qualitatively, but not quantifiably, different from what it received from MD Helicopters. Stated differently, you may consider whether, due to MD's allegedly material, false statements regarding its intended compliance with FAR, the purpose of the FMS contracts and, thus, the FMS program were compromised, and the government lost the intangible benefit of contracting with an eligible, regulatory-compliant supplier instead of MD Helicopters. If you find that MD Helicopters' alleged conduct completely compromised the value that the government gains from the FMS program as it relates to the specific contracts at issue, you may award the full amount of the contracts as damages.

If you find that the relators have failed to establish that the FMS contracts were entirely compromised by MD Helicopters' fraudulent inducement, in assessing damages you may consider the difference, if any, between the amount of money the government paid to MD Helicopters due to its false claims and the value of the benefits, if any, that MD conferred to the government.

Of course, the fact that I have given you instructions concerning the issue of damages should not be interpreted in any way as an indication that I believe that the relators should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges -- judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

17

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

It is proper to add a final caution.

Nothing I have said in these instructions -- and nothing I have said or done during the trial -- has been said or done to suggest to you what I think your verdict should be.

What the verdict shall be is your exclusive duty and responsibility.

Counsel will now be permitted to make closing argument.

I remind you once again that the arguments of counsel are not evidence in this case. The court allows counsel to make closing arguments or summations to help you recall the evidence and to help you tie the evidence together. You should not substitute what the lawyers say about the evidence for your own recollection. Neither should you decide this case based on the eloquence of these attorneys and their arguments. You must decide the case solely based on your view of the facts as you find them to be from the evidence, and applying the law to those facts as I have instructed you.

DONE the **24th** day of September, 2021.

                                                  */s/ Abdul Kallon*
                                                 **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE